806

Molly Levine, Plaintiff, *v.* New York Life Insurance Company, Defendant.

Supreme Court, New York County, May 27, 1935.

*Reich, McNally & Lehr* [*Samuel R. Golding* of counsel], for the plaintiff.

*Louis H. Cooke* [*Ferdinand H. Pease* of counsel], for the defendant.

Lauer, J. This action is brought to recover the face amount of a life insurance policy by the widow of the insured, the beneficiary named in the policy. The policy contains the provision that " due proof of death " is required as a prerequisite to payment. At the trial the death of the insured was not disputed, and no claim that the policy was not in force at the time of death was asserted.

The answer contains three separate defenses: first, that the insured, his beneficiary, who is his widow and the plaintiff in this action, and his son, who was a hospital interne at the time the application for the policy was made and at the time of trial was a practising physician, concealed from the defendant knowledge that the insured was suffering from cancer of the stomach and other serious diseases and conspired to procure the policy in suit. As a part of this defense it is asserted that the plaintiff and her son, having knowledge of the clause in the policy providing that "This policy shall be incontestable after two years from its date of issue," conspired after the death of the insured to conceal from the defendant for more than two and a half years the fact that the insured had died from cancer and that he had consulted and been examined by physicians prior to the application for the policy.

The second defense, in substance, is one of fraudulent misrepresentation in that the insured in his application for the policy denied that he had suffered from any ailment or disease or that he had consulted or been examined or treated by any physicians within five years of his application, and it is asserted that this was done as part of a conspiracy to conceal the cause of the insured's death from the defendant beyond the period of two years, the time specified in the policy when it would become incontestable.

The third defense is a repetition of the first and second defenses by incorprration of the paragraph numbers of those two defenses.

The plaintiff's proof established the issuance of the policy, the payment of the premium and the death of the insured. Evidence was also given by the son of the deceased of the mailing of a letter to the defendant within about a week of the death wherein, it was claimed, the particulars of the death of the insured were given. Within about a week of the death of the insured one Stoller, an agent of the defendant, was advised by the family of the insured of the date, place and cause of death. The plaintiff's proof further established that the defendant had written records of the insured's death both in its Grand street branch and at its home office, No. 1 Madison avenue, within about a week of the event. At the close of the plaintiff's case the defendant moved for a dismissal of the action and decision was reserved.

The defendant then offered evidence to the effect that the insured had consulted a physician a few weeks before he applied for the insurance; that about two and a half years after the death of the insured a firm of attorneys representing the plaintiff had sent to the defendant, properly filled in, a set of its printed forms constituting formal proof of death; that it had received no other formal proof of death; that at the time the insured signed the

application of insurance the plaintiff and her son were present. It also established that the insured was operated on for cancer and died a few days after the operation.

At the close of the case the defendant again moved for a dismissal of the action and decision was reserved. The defendant also moved for a direction of the verdict, which was denied. Plaintiff's counsel moved for the direction of a verdict, on which decision was reserved. After a discussion in which defendant's counsel insisted there was one question of fact which he wished submitted to the jury, to wit, whether there was a conspiracy in which the plaintiff had participated, the question was submitted to the jury in the following language: " Was the insurance policy in suit procured from the defendant pursuant to a conspiracy between the insured, Rubin Levine, his wife, the plaintiff, Mollie Levine, and their son Bernard Levine, fraudulently to secure money from the defendant upon the death of Rubin Levine? "

Neither counsel excepted either to the form of the question or to the submission of that question only. The jury returned a negative answer. Counsel then stipulated that the court might render a verdict in the absence of the jury and that the trial be considered continued.

There is no doubt but that Stoller was the agent of the defendant to receive proof of death, so that his information was the defendant's. (*McClelland* v. *Mutual Life Ins. Co.*, 217 N. Y. 336.) Not only was he " clothed with apparent authority to represent the defendant " so that " information imparted to him may be imputed to the defendant represented by him," to employ the language of the opinion in the *McClelland* case just cited, but the testimony established that he had actual authority to obtain this information as a part of his duties for the defendant. His knowledge under the facts established in the present case undoubtedly must be considered the knowledge of the defendant. Since he knew within a week of the insured's death that he had died, when he had died, where he had died and the cause of his death, unless more formal proof is required under the policy, the defendant had " due proof of death," even though there be disregarded both the letter which the plaintiff's son testified he had mailed to defendant and which it denied that it had received, and the proof of death supplied on the defendant's printed forms by the attorneys representing the plaintiff two and one-half years after the death of the insured.

Generally speaking, any fact or circumstance which leads the mind to the affirmative or negative of any proposition constitutes " proof." (Black Law Dict.) Defendant, however, asserts that " proof," as that term is used, means something more than the

unverified declaration of a party in interest, whether formal or informal, and cites in support of its assertion *O'Reilly* v. *Guardian Mutual Life Insurance Co.* (60 N. Y. 169).

In that case the policy required both " due notice *and* proof of death." The court, while admitting that the requirement for notice had been complied with, held that the same letter which was adequate as notice was not sufficient as " proof of death." The court apparently rested its decision upon the use of the conjunctive " and " in the phrase quoted. Evidently, in that case, the parties contemplated by the use of the conjunctive more than the informal notice which the letter supplied when both " notice " and " proof " were required. In the present case there was no such double requirement, only " proof " being required.

The purpose of this condition in the policy, according to the Court of Appeals, is " that the insurer may be able intelligently to form some estimate of his rights and liabilities before he is obliged to pay." (*O'Reilly* v. *Guardian Mutual Life Insurance Co.*, *supra*, at p. 173; quoted also in *Wachtel* v. *Equitable Life Assurance Society*, 266 N. Y. 345, at p. 352.) What is generally considered " due proof " cannot be regulated or limited by any custom or usage prevailing in the insurer's business unless notice of such custom or usage has been brought home to the insured. (*Dana* v. *Northwestern Mutual Life Ins. Co.*, 152 Misc. 383; affd., 236 App. Div. 836.)

The requirement of " due proof " must be liberally construed in favor of the insured. (*Glazer* v. *Home Ins. Co.*, 190 N. Y. 6.) Where the policy fails to provide for any special or particular method or manner in which the proof of death should be given, any facts furnished the insurer are sufficient which will give assurance that the event has happened upon which liability to the insured depends. (*Schell* v. *Metropolitan Life Ins. Co.*, [Mo. App.] 3 S. W. [2d] 269.)

In *Dochter* v. *Equitable Life Assurance Society* (266 N. Y. 648) an examination of the case on appeal discloses that the trial court submitted to the jury the issue of the receipt of the two alleged letters sent by the insured's brother to the defendant notifying the defendant of the insured's disability and confinement in a hospital, the court charging that the letters if received would constitute " due proof " required under the terms of the policy. A judgment for the plaintiff was unanimously affirmed without opinion both by the Appellate Division and by the Court of Appeals. In the briefs submitted by the parties in the Court of Appeals, it appears to have been admitted that the sole issue in the case was the sufficiency of the evidence constituting " due proof " of dis-

ability. While it is well settled that an affirmance of a judgment by the Court of Appeals without opinion indicates merely approval of the result of the lower court, and not of any of the reasoning (*Scott & Co.* v. *Scott*, 186 App. Div. 518), nevertheless, in view of the admission of counsel in their briefs, it may be said that the Court of Appeals, when it affirmed the judgment, approved the findings of the lower court to the effect that the information in the letters sufficed to constitute " due proof " under the policy.

In the present case the defendant, having failed to provide in its policy for any particular kind of proof, had obtained through Stoller, its own agent for that purpose, all of the information as to the date, place and cause of death which enabled it to determine its rights and liabilities. It appearing that the facts concerning the death were given to the defendant's agent within about a week of the death of the insured, the claim that the plaintiff and her son conspired to withhold that information to lull the defendant into a false sense of security until the two-year period of incontestability had expired necessarily must be disregarded. This question, too, is sufficiently disposed of by the answer of the jury to the question submitted. The defendant could have instituted an action at any time within the two years provided in the policy, seeking an annulment of the policy for fraud and conspiracy. It chose, however, to do nothing.

The motions to dismiss made at the close of the plaintiff's case and at the close of the entire case on which decision was reserved are denied. The plaintiff's motion for a direction is granted and judgment is directed for the plaintiff in the sum of $10,000, with interest of $2,240. An exception is allowed to defendant. Thirty days' stay is granted, and sixty days to make a case are allowed.